**TRUST CO. OF GEORGIA v. ALLEN, Collector of Internal Revenue.**

Civ. A. No. 580.

United States District Court
M. D. Georgia, Macon Division.

May 30, 1949.

Spalding, Sibley, Troutman & Kelley, Atlanta, Ga. (Furman Smith, Atlanta, Ga., of counsel), for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Fred S. Gilbert, Jr., Sp. Assts. to Atty. Gen., John P. Cowart, U. S. Atty., Macon, Ga., T. Reese Watkins, Asst. U. S. Atty., Macon, Ga., for defendant.

DAVIS, District Judge.

The above case having been submitted to the Court without the intervention of a jury, and the Court having heard evidence and argument of counsel, the Court makes the following findings of fact and conclusions of law:

Findings of Fact.

1. In 1931 and prior thereto plaintiff, Trust Company of Georgia, had a wholly owned subsidiary named the First National Company. The First National Company was engaged in the business of underwriting corporate securities and in trading in and distributing such securities.

2. In 1931, Tom Huston owned all of the stock in the Tom Huston Corporation. The Tom Huston Corporation in turn owned 60,000 shares of common stock of the Tom Huston Peanut Company out of a total of 100,000 shares of common stock outstanding.

3. The Tom Huston Corporation had gone into a frozen fruit venture and had incurred an indebtedness of $400,000 to Courts and Company. Courts and Company had demanded payment of the loan. Tom Huston, as sole stockholder of the Tom Huston Corporation, approached the First National Company about securing a loan to refinance the indebtedness to Courts & Company. He expected to pay the indebtedness ultimately by selling stock either of the Tom Huston Corporation or some of the stock of the Tom Huston Peanut Company owned by the Tom Huston Corporation, but in the meantime he wished the indebtedness refinanced. The First National Company had previously underwritten and distributed stock for him successfully. In consideration of his giving the First National Company an option or refusal to handle the underwriting and distribution of stock Tom Huston Corporation might wish to sell, either its own stock or stock of Tom Huston Peanut Company owned by it, the First National Company agreed to secure a loan of $400,000 for it. Pursuant to that agreement, the First National Company requested its parent, Trust Company of Georgia, to make a loan of $400,000 to Tom Huston Corporation and Trust Company of Georgia did, in 1931, make a loan of $400,000 to Tom Huston Corporation, secured by a pledge of the 60,000 shares of Tom Huston Peanut Company stock owned by Tom Huston Corporation.

4. In January, 1932, the Tom Houston Corporation had become insolvent. The frozen fruit venture had proven very unsuccessful. In the meantime Tom Huston Peanut Company also had gotten in bad shape. Its management had deteriorated. Tom Huston furnished the principal management of the Tom Huston Peanut Company, and during 1931 he had devoted almost his entire attention to the frozen fruit venture and had neglected the Tom Huston Peanut Company. The stock of Tom Huston Peanut Company had declined in value until, on January 21, 1932, it was worth only $3 per share. The Trust Company of Georgia then considered the indebtedness of Tom Huston Corporation worthless, except for the value of the Tom Huston Peanut Company stock pledged to secure it. The Trust Company of Georgia saw no possibility of recovering on the indebtedness except from the proceeds of the stock pledged as security.

5. Trust Company of Georgia considered it important to take over the stock of the Tom Huston Peanut Company, and control of that company, as soon as possible, since it was being allowed to drift and its assets were being dissipated. Therefore, on January 21, 1932, Trust Company of Georgia took over the 60,000 shares of common stock of Tom Huston Peanut Company pledged to secure the indebtedness of $400,000, in full satisfaction and complete cancellation of the indebtedness of $400,000 owed to Trust Company of Georgia by Tom Huston Corporation. On January 21, 1932, said common stock of Tom Huston Peanut Company so acquired by Trust Company of Georgia had a fair market value of $3.00 per share, or a total of $180,000.

6. Trust Company of Georgia, immediately upon taking over the 60,000 shares of stock of Tom Huston Peanut Company took over control of that company, installed new management, put one of its officers and later an additional officer on the board of directors of Tom Huston Peanut Company, and constantly worked to improve the financial condition of Tom Huston Peanut Company. The officials of Trust Company of Georgia gave close and constant attention to the business of Tom Huston Peanut Company. Tom Huston Peanut Company itself was then in bad financial condition. Actually it operated for a while under the supervision and guidance of a creditors' committee. Trust Company of Georgia itself made advances to Tom Huston Peanut Company to keep it afloat. Trust Company of Georgia was one of the creditors represented by the creditors' committee.

7. In 1935 Trust Company of Georgia and the other common stockholders of Tom Huston Peanut Company, except the small stockholders owning less than 5 shares, agreed to and did each contribute 20% of the common stock held by each to the Tom Huston Peanut Company to be used by Tom Huston Peanut Company in lieu of cash in satisfaction of the arrearage of dividends on its preferred stock, in order to conserve the cash of Tom Huston Peanut Company and to improve its financial condition.

8. Between 1935 and 1940 Trust Company of Georgia sold 5,000 shares of its stock of Tom Huston Peanut Company to officers of the Tom Huston Peanut Company at a price of less than $3 per share, to increase their incentive and as an incentive or indirect compensation to the management of the company.

9. In 1940 Trust Company of Georgia sold the remaining 43,000 shares of stock of Tom Huston Peanut Company owned by it to Tom Huston Peanut Company at $12.50 per share, or a total of $537,500.

10. The entering into the contract between the First National Company and Tom Huston Corporation, the making of the loan by Trust Company of Georgia, to Tom Huston Corporation pursuant to that contract, the taking over of the stock of Tom Huston Peanut Company pledged to secure that debt in satisfaction of the debt, the activities of Trust Company of Georgia in attempting to rehabilitate and improve Tom Huston Peanut Company, and the sale of the stock of the Tom Huston Peanut Company in 1940 was one integrated transaction.

11. To the extent that the sales price of the stock sold in 1940 represented recovery

946

of the loss suffered by Trust Company of Georgia in 1932 for which it received no tax benefit, Trust Company of Georgia realized no gain from the sale.

12. In the taxable year 1932 Trust Company of Georgia and its wholly owned subsidiaries for whom consolidated income tax returns were filed, had, independently of the loss on the transaction described above, net taxable income of only $58,455.37. Only to the extent of $58,455.37 did Trust Company of Georgia realize any tax benefit from said loss.

13. It is not contended by the defendant that plaintiff has recovered any other losses, expenditures or accurals of the character described in Reg. 111, Sec. 29.22(b) (12)–1 in regard to the year 1932, other than the transaction described above.

14. The proceeds of sale of Tom Huston Peanut Company stock in 1940, to the extent that it was a recovery of a loss suffered in 1932 for which plaintiff received no tax benefit, was a nontaxable recovery within the meaning of Reg. 111, Sec. 29.22(b) (12)–1, as amended by T.D. 5454, 1945, C.B. 68, and within the meaning of the decision of the Supreme Court of the United States in the case of Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

15. The sales price of the Tom Huston Peanut Company stock in 1940 represented capital gain to plaintiff only to the extent of $214,705.37.

16. Plaintiff paid to defendant income and declared value excess profit taxes assessed against plaintiff for the calendar year 1940, on $376,250 as long term capital gains, being the difference between $161,250, the fair market value of 43,000 shares of Tom Huston Peanut Company common stock on the date acquired by plaintiff in 1932, adjusted on account of the 20% of said stock contributed to the Company in 1935, and $537,500, the price at which said stock was sold in 1940.

## Conclusions of Law

1. The proceeds of sale received by plaintiff in 1940 from the sale of the Tom Huston Peanut Company stock represented in part a recovery of the loss suffered by plaintiff in 1932 for which it received no tax benefit, and to the extent that it represented recovery of a loss for which plaintiff received no tax benefit, it is to be excluded from gross income under provisions of Reg. 111, Sec. 29.22(b) (12)–1, as amended by T.D. 5454, and under the rule laid down by the Supreme Court of the United States, in Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S. Ct. 239, 88 L.Ed. 248.

2. Plaintiff is entitled to recover from defendant income taxes for the year 1940 in the principal amount of $36,967.95 and declared value excess profit taxes in the principal amount of $7,538.62, with interest on each of said sums, as provided by law.

## Judgment and Certificate of Probable Cause

The above stated case having been submitted to the Court without the intervention of a jury and the Court having heard evidence and argument of counsel and having made and filed findings of fact and conclusions of law as appears of record,

It Is Considered, Ordered And Adjudged that plaintiff, Trust Company of Georgia, do have and recover from defendant, Marion H. Allen, Collector of Internal Revenue, the principal sum of $36,967.95 as overpayment of income taxes for the year 1940, and the principal sum of $7,538.62 as overpayment of declared value excess profit taxes for the year 1940, with interest upon each of said sums as provided by law.

The Court certifies that defendant, Marion H. Allen, Collector of Internal Revenue, had probable cause and acted under the direction of the Secretary of the Treasury or other proper official in collecting the taxes, for the refund of which this judgment is entered.